**UNITED STATES of America**

v.

**Frank D. WUTERICH, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCCA 200800183.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

20 June 2008.

For Appellant: LT Timothy H. Delgado, JAGC, USN.

For Nominal Appellee: Maj Christian J. Broadston, USMC; LT Kathleen L. Kadlec, JAGC, USN.

For Non–Party Appellee: Lee Levine, Seth D. Berlin, and Nicole Auerbach.

Before O'TOOLE, Chief Judge, MITCHELL, and FELTHAM, Senior Judges.

## PUBLISHED OPINION OF THE COURT

FELTHAM, Senior Judge:

This case is before us on a Government interlocutory appeal, pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862, and RULE FOR COURTS-MARTIAL 908, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). The Government contends that the military judge erred as a matter of law when he quashed a Government subpoena for videotape and other material owned by CBS Broadcasting Inc. ("CBS"), which material purportedly includes several hours of an interview conducted by a CBS News correspondent with Staff Sergeant (SSgt) Wuterich, here the nominal appellee. We have carefully considered the record of the proceedings, the Government's brief on appeal, and non-party CBS's reply brief. We conclude that the military judge abused his discretion in quashing the Government subpoena on the basis that the requested evidence was cumulative, without first conducting an *in camera* review of the evidence.

### Background

The nominal appellee (hereinafter, appellee) is charged, *inter alia*, with dereliction of duty and the voluntary manslaughter of 14 Iraqi men, women, and children, at or near Haditha, Iraq, in the aftermath of a roadside bombing that killed a Marine in the appellee's convoy. After being charged, the appellee participated in an interview with Mr. Scott Pelley, a CBS News correspondent. This interview led to the production of a *60 Minutes* broadcast segment. During the broadcast, the appellee described what happened during the bombing of his convoy and its aftermath, including the circumstances under which the civilians were killed. The Government issued a subpoena for "any and all video and/or audio tape(s), to include out-takes and raw footage" of appellee's interview with Mr. Pelley. CBS provided the publicly broadcast footage, but, citing a "news-gathering" privilege under the First Amendment, declined to provide any audio-video material that had not been broadcast, including out-takes. CBS then moved to quash the subpoena. After reviewing the broadcast *60 Minutes* segment, the military judge found that it was "clearly" relevant

and material. However, without having viewed the material that had not been broadcast, the military judge concluded that it was not necessary because it was cumulative of written statements submitted to the court for consideration on the motion, and of other information available to the Government. The military judge granted CBS's motion to quash. The Government responded with this interlocutory appeal.

### Jurisdiction

We begin with a discussion of our authority to decide this matter. CBS argues that the decision to quash the subpoena is not an evidentiary ruling that excludes evidence and, therefore, does not fall within our jurisdiction to review under Article 62(a)(1)(B), UCMJ. We disagree.

■ Article 62(a)(1)(B), UCMJ, confers upon this court jurisdiction over Government appeals from orders or rulings by a military judge, presiding at a court-martial which may adjudge a punitive discharge, that, *inter alia,* "exclude[ ] evidence that is substantial proof of a fact material to the proceeding." The opinions of our superior court interpreting Article 62, as well as the legislative history of that statute, establish that "Article 62 was intended by Congress to be interpreted and applied in the same manner as the [federal] Criminal Appeals Act, 18 U.S.C. § 3731." *United States v. Brooks,* 42 M.J. 484, 486 (C.A.A.F.1995). *See United States v. Lincoln,* 42 M.J. 315, 320 (C.A.A.F.1995). In other words, Article 62 ensures that the Government has the same opportunity to appeal adverse trial rulings that the prosecution has in federal civilian criminal proceedings. *United States v. Lopez de Victoria,* 66 M.J. 67, 71 (C.A.A.F.2008). The federal Criminal Appeals Act permits the United States to appeal orders "suppressing or excluding" evidence in criminal cases where "the evidence is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731. There is no military case law addressing whether the Government may appeal a decision of the military judge to quash a Government subpoena issued to a nonparty. There is significant case law from Article III Courts that have interpreted and applied 18 U.S.C. § 3731. Since Article 62, UCMJ, is intended to parallel that statute, we may look to the federal courts for guidance in interpreting our jurisdictional authority.

■ Article III courts have broadly construed the scope of 18 U.S.C. § 3731 by utilizing an "effects" test.[1] This test focuses on the effect of a court order or ruling rather than its facial categorization or title. *United States v. Margiotta,* 662 F.2d 131 (2d Cir. 1981); *United States v. Humphries,* 636 F.2d 1172, 1175 (9th Cir.1980). In *United States v. Smith,* 135 F.3d 963 (5th Cir.1998), the United States Court of Appeals for the Fifth Circuit was presented with a Government appeal in which the facts and issues were almost identical to those in the case at bar. In *Smith,* the United States sought a subpoena for the production of a videotaped interview of a criminal defendant conducted by a local television station. That television station moved to quash the subpoena on First Amendment grounds, claiming a "news reporter's privilege." The district court quashed the subpoena, and the Government appealed. In concluding it had jurisdiction to decide the matter, the Fifth Circuit held that § 3731 "provides the government with as broad a right to appeal as the Constitution will permit." *Smith,* 135 F.3d at 967 (citing

---

1. This court and our superior court have both applied what amounts to an "effects" test in determining jurisdiction to hear appeals under Article 62, UCMJ, but not in the context of an appeal of a military judge's order to quash a Government subpoena. *See United States v. Taylor,* 60 M.J. 720, 725 (N.M.Ct.Crim.App.2004)(military judge's imposition of a sanction against the Government [preventing the Government from presenting the testimony of a confidential witness] if the Government refused to disclose evidence the military judge determined to be relevant and mate-rial "was the functional equivalent of an order excluding evidence"); *United States v. True,* 28 M.J. 1 (C.M.A.1989)(military judge's abatement order, issued when the Government refused to pay for expert investigative assistance for the defense [after the military judge granted a defense request for such assistance] was the "functional equivalent" of a ruling that terminated the proceedings of the court-martial). Here, barring the Government from obtaining the evidence sought functionally prevents the Government from presenting that evidence at trial.

*United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975)). The court of appeals specifically found it had jurisdiction pursuant to the federal statute because the district court order quashing the subpoena effectively " 'suppresses or excludes evidence' ... in a criminal proceeding" in which "the relevant United States Attorney 'certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding in a criminal proceeding.' " *Id.*

Though there is a difference in the wording of Article 62, UCMJ, and its federal civilian counterpart, we find no discernible difference between the effect of the term "suppress" and the term "exclude" as applied to evidence; the effect of both is to deprive the Government of the evidence sought, and its use at trial. More importantly, to limit our jurisdiction based on this minor difference in terms would create a significant discrepancy between when jurisdiction vests in the Article III courts of appeal and in the military appellate courts—a result that would clearly be contrary to the intent of Congress. *Brooks,* 42 M.J. at 486.

Finally, to invoke jurisdiction under § 3721, the relevant United States Attorney must certify that a federal appeal is taken because the evidence excluded is substantial proof of a material fact. The military system differs in process, but includes essentially the same requirement. Government appeals must be perfected pursuant to the Rules for Courts–Martial, under which the trial counsel must certify that the evidence excluded is substantial proof of a fact material to the proceeding. RULE FOR COURTS-MARTIAL 908(b)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed). As well, the Judge Advocate General or his designee must decide whether to file the appeal. R.C.M. 908(c)(6). Thus, we need not be distracted by a preliminary determination of whether the evidence sought is both substantial and material; the certification by the trial counsel and the decision of the Judge Advocate General to perfect this appeal are sufficient to invoke jurisdiction as effectively as does the certification of a United States Attorney under the Criminal Appeals Act.

Accordingly, we hold that this court has jurisdiction under Article 62(a)(1)(B), UCMJ, to resolve a Government appeal challenging the military judge's order quashing a Government subpoena.

### Standing of Nominal Appellee

■ At the hearing on the motion to quash, the appellee asserted that he was not a party to the dispute between CBS and the Government. Record at 32. Following the filing of the Government's interlocutory appeal, the appellee filed a motion to dismiss, a motion for leave to reply to the Government's answer to the motion to dismiss, and an answer to the Government appeal. At the direction of this court, the appellee also filed a brief in support of his standing to join the issues.

Whether an accused has standing to challenge evidence is generally analyzed in the context of Fourth Amendment rights and the reasonable expectation of privacy. *United States v. Salazar,* 44 M.J. 464, 464 (C.A.A.F. 1996). *See also United States v. Padilla,* 508 U.S. 77, 81, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993)(accused lacked standing to challenge drugs found in search of auto driven by co-conspirator). An accused may also have standing to object to evidence when some action of the Government has impacted the reliability of the evidence, such as in cases of " 'coerced confessions, unlawful command influence, interference with the rights of confrontation or cross-examination,' or [interference with] 'the right to present evidence.' " *United States v. Johnson,* 53 M.J. 459, 462 (C.A.A.F.2000)(quoting *United States v. Jones,* 52 M.J. 60, 64 (C.A.A.F.1999)). Similarly, some courts have recognized standing to challenge subpoenas issued to third parties on grounds other than Fourth Amendment. These cases turn on whether there is some other constitutionally recognized privacy or property interest. *In re Grand Jury Proceedings,* 814 F.2d 61, 67 (1st Cir.1987)(citing *In re Special 1977 Grand Jury,* 581 F.2d 589 (7th Cir.1978))(state attorney general had standing to challenge subpoenas served on his staff); *United States v. Finazzo,* 407 F.Supp. 1127, 1132

(E.D.Mich.1975) (defendant had standing to temporarily enjoin subpoenas of records pertaining to his financial transactions).

The appellee raises none of the aforementioned interests, but asserts that his standing in the dispute between the Government and CBS derives from his having been charged with an offense, and because the Government designated him "appellee" in the caption of the Government's interlocutory appeal. These are wholly inadequate as the basis for standing. We, therefore, conclude that the appellee lacks standing. *See United States v. Smelley,* 33 C.M.R. 516, 524, 1963 WL 4902 (ABR 1963) (when a subpoena is used to compel a reluctant witness, it is only the witness who may take exception). *Accord United States v. Johnson,* 53 M.J. 459, 464 (C.A.A.F.2000) (Gierke, J., concurring in the result).

### Standard of Review

■ In reviewing a Government interlocutory appeal, this court may act only on matters of law. Art. 62(b), UCMJ; R.C.M. 908(c)(2). *See United States v. Cossio,* 64 M.J. 254, 256 (C.A.A.F.2007), *cert. denied,* —— U.S. ——, 127 S.Ct. 3029, 168 L.Ed.2d 730 (2007). "Within this restriction, the pertinent inquiry is the legal sufficiency of evidence *of record* supporting the judge's finding, not the existence of evidence—or of potential evidence—supporting a contrary holding." *United States v. Vangelisti,* 30 M.J. 234, 237 (C.M.A.1990) (emphasis in original).

Unlike appeals under Article 66(c), UCMJ, we may not make findings of fact. Rather, we are "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous." *United States v. Gore,* 60 M.J. 178, 185 (C.A.A.F. 2004). *See also, United States v. Lincoln,* 40 M.J. 679, 683 (N.M.C.M.R.1994), *aff'd in part and set aside in part,* 42 M.J. 315, 321–22 (C.A.A.F.1995). We have no "authority to find facts in addition to those found by the military judge." *Gore,* 60 M.J. at 185. If the findings of fact are incomplete or ambiguous, the appropriate remedy is a remand to clarify the findings or to make additional findings. *Lincoln,* 42 M.J. at 320. *See United States v. Kosek,* 41 M.J. 60, 64 (C.M.A.1994); *Unit-*

*ed States v. Rittenhouse,* 62 M.J. 509, 514 (Army Ct.Crim.App.2005), *rev. denied,* 63 M.J. 162 (C.A.A.F.2006). "[W]e conduct a *de novo* review of the military judge's conclusions of law." *United States v. Davis,* 62 M.J. 533, 536 (N.M.Ct.Crim.App.2005), *aff'd,* 63 M.J. 171 (C.A.A.F.2006). We will not overturn a military judge's evidentiary decision unless that decision was "'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McDonald,* 59 M.J. 426, 430 (C.A.A.F.2004)(quoting *United States v. Miller,* 46 M.J. 63, 65 (C.A.A.F. 1997) (citations omitted)). A military "judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Humpherys,* 57 M.J. 83, 90 (C.A.A.F.2002)(citing *United States v. Ayala,* 43 M.J. 296, 298 (C.A.A.F.1995)).

### Motion to Quash

■ In evaluating the motion to quash the Government subpoena, the military judge "first applied the requirements of materiality, relevance, and necessity under Rule for Court–Martial 703(f)(1)" to the audio-video evidence. Record at 87–88. In so doing, he found that the contents of the *60 Minutes* broadcast were "clearly relevant as they are statements of the accused concerning his involvement in the charged offenses" and "the on-air interview clearly establishes the materiality and relevance of this evidence." *Id.* at 88. Having viewed the same broadcast as the military judge, we conclude that his findings of fact are supported by the record and his conclusions of law are correct. Though not specifically articulated by the military judge, his ruling implicitly concludes that this portion of the evidence was also necessary. We independently conclude that it is. Relevant evidence is necessary when it is not cumulative and contributes in a positive way to the proponent party's presentation of the case. R.C.M. 703(f)(1), Discussion. This aired portion of the CBS audio-video material includes detailed admissions by the appellee that are not contained in the other written statements before the court. This portion of the audio-video material, therefore, is not cumulative and it is necessary.

Moving to the unaired audio-video material, we will, for ease of reference, refer to this material as "*out-takes.*" CBS asserted a claim of "news-gathering" privilege as the basis for a motion to quash the subpoena issued for all of its audio-video material, which necessarily included the out-takes. Rather than resolve the existence and applicability of the claimed privilege, the military judge moved to consider whether the unaired out-takes were relevant and necessary under R.C.M. 703. Unfortunately, he was at a disadvantage in assessing that which he had not seen. The factual record could, perhaps, have been developed with testimony sufficient to allow the military judge to conclude that the broadcast segment was clearly relevant and necessary, but that the out-takes were not. This, however, was not done, probably because it was not possible to do so with testimony about the contents of a detailed audio-video interview.

The military judge did know the contents of the aired *60 Minutes* broadcast and the substantive information contained in the documents admitted into evidence for consideration on the motion.[2] These documents contained statements of the appellee and others. As already noted, the military judge concluded as a matter of law that the audio-video material he had seen was clearly relevant and material, notwithstanding the statements contained in the documents received into evidence. Without then developing the record regarding what was contained in the balance of the audio-video material, or the substantive information in the other categories of evidence he expected to be available to the Government, he concluded that the out-takes were cumulative and unnecessary. This decision is unsupported by a sufficiently developed factual record, and it is at odds with the

military judge's findings related to the *60 Minutes* broadcast, his conclusions of law, and the balance of information in the record. Under these circumstances, we hold his ruling is an arbitrary determination. *McDonald,* 59 M.J. at 430.

Ordinarily an *in camera* review would be the proper mechanism for resolving an evidentiary dispute involving a claim of privilege. *See United States v. Rivers,* 49 M.J. 434, 437 (C.A.A.F.1998). *See also United States v. Huberty,* 53 M.J. 369 (C.A.A.F.2000) (*in camera* review of an expert witness' credentials file); *United States v. Briggs,* 48 M.J. 143, 145 (C.A.A.F.1998)(preferred practice is for the military judge to inspect medical records *in camera*); *United States v. Romano,* 46 M.J. 269, 275 (C.A.A.F.1997) (*in camera* review of attorney work-product); *United States v. Branoff,* 38 M.J. 98 (C.M.A. 1993) (*in camera* review of law enforcement personnel records); *United States v. Reece,* 25 M.J. 93 (C.M.A.1987) (*in camera* review of juvenile records). Indeed, in this case, the Government requested an *in camera* review of the undisclosed audio-video material, but the military judge summarily denied it. Record at 89.

In *United States v. Klemick,* 65 M.J. 576, 579–80 (N.M.Ct.Crim.App.2006), we observed that there was no military or federal precedent establishing the legal standard to be applied by a military judge in deciding whether to conduct an *in camera* review. *Klemick* involved a medical records privilege recognized under MILITARY RULE OF EVIDENCE 513, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.) and a patient who objected to the disclosure of psychiatric records. We held there that a threshold showing by the Government is required before an

---

**2.** CBS submitted 14 exhibits with its brief on the pretrial motion to quash (Appellate Exhibit XLII) and an additional five exhibits with its reply brief (AE XLIV). Record at 2. The Government likewise submitted five enclosures with its reply brief (AE XLIII). When asked by the military judge whether there were any other items of evidence with respect to the motion to quash, both CBS and the Government indicated that there was none. Record at 3. The record is reasonably clear that the military judge considered the substance of the documentary evidence submitted by CBS and the Government with their trial pleadings, including several statements of the appellee and other witnesses. The military judge did not have before him the substance of the other evidence to which he referred by source category. *Id.* at 86–87. The military judge simply noted there were other sources of information available to the Government, such as the statements of all members of the appellee's squad, forensic evidence, photographs and other physical evidence from the scenes of the offenses, and "a significant amount of secondary evidence" the military judge perceived would be introduced. *Id.* at 87.

*in camera* review of the protected records may be conducted. That includes showing 1) a specific factual basis demonstrating a reasonable likelihood that the requested records would yield admissible evidence; 2) the information sought is not merely cumulative of other available information; and 3) the moving party made reasonable efforts to obtain substantially similar information through non-privileged sources. *Klemick,* 65 M.J. at 580. Importantly, this is a threshold determination and, as such, the standard of proof is not high, because the moving party is not privy to what is actually contained in the records sought. *Id.* The holding in *Klemick,* though developed regarding psychiatric records, would seem to have equal application when a military judge is confronted with other types of information subject to an assertion of privilege, and we extend it to cover facts such as in this case.

We do not criticize the military judge for failing to specifically apply our holding from *Klemick,* however, we do find his characterization of the Government subpoena as "fishing" and his summary denial of a request for an *in camera* review to be unsupported by the record and, thus, to be arbitrary. We would ordinarily return the record to the military judge for additional findings of fact and conclusions of law. Here, however, we find the record sufficient to resolve the threshold issue.

The military judge determined that a subset of the contested out-takes—the *60 Minutes* broadcast—contained clearly relevant, material and admissible statements of the appellee. This mixed finding of fact and conclusion of law provides a specific basis demonstrating a reasonable likelihood that the whole of the requested out-takes—the source of the broadcast footage—would also yield admissible evidence. The broadcast also supports a reasonable implication that

the aired *60 Minutes* excerpts would not be as focused and well-organized without the information discussed in the out-takes. As well, given the military judge's findings and conclusions regarding the broadcast, the whole of its source material cannot, as a threshold matter, be dismissed as merely cumulative of other available information. Among the other evidence reviewed by the military judge, the witness statements he considered did not convey, as does the broadcast, the subjective knowledge, impressions, and thought processes of the appellee at the time of the alleged offenses. Even the appellee's written statements do not contain substantially the same detailed information as the broadcast excerpts of audio-video footage. On this record, the Government has reasonably demonstrated there is no other non-privileged source for substantially similar evidence. We conclude, therefore, that the Government has met its threshold burden and, on remand, we direct an *in camera* review of the contested audio-video material to determine if it meets the relevance, materiality and necessity requirements of R.C.M. 703.[3] *United States v. Rodriguez,* 60 M.J. 239, 246 (C.A.A.F.2004).

We conclude by noting that, since the military judge made no ruling regarding the privilege claimed by CBS, the issue of whether—or to what extent—any privilege exists or applies to the facts of this case is not ripe for our review. We would, therefore, exceed our scope of review under Article 62 were we to consider that issue now. *United States v. Kosek,* 41 M.J. 60, 64 (C.M.A.1994).

### Conclusion

The Non–Party CBS Broadcasting Inc. motion to dismiss is denied and the interlocutory appeal of the Government is granted.

Prior to ruling on the CBS motion to quash, we direct the military judge to con-

---

**3.** Additionally, the military judge was placed on notice by the appellee that he intended to object to the admission of the *60 Minutes* broadcast on the basis of a lack of completeness. Mɪʟ. R. Evɪᴅ. 106; Record at 26. The rationale, of course, is that the appellee's statements have been taken out of their original context in the editing process. Certainly, the military judge would have to resolve this objection prior to admitting the broadcast into evidence. How he intended to

address this is not clear from the record before us. What is clear is that CBS also served notice that, in response to a defense request for access to the out-takes, CBS would again seek to assert privilege over the material. Record at 27. Judicial economy would seem to require all necessary fact-finding about this evidence be completed pre-trial. The *in camera* review ordered herein will serve to address the completeness issue as well, if and when it is raised.

duct additional fact-finding to (1) fully develop the record on the contents of the audio-video material, including an *in camera* review of any material over which CBS asserts privilege; (2) if, based on the facts developed, a determination is made that undisclosed audio-video material is relevant and necessary, the military judge will then develop the factual and legal basis for any CBS refusal to comply with the federal subpoena issued to obtain the material; and (3) taking into consideration protective measures available to the military judge, address whether, and to what extent, any asserted "news-gathering" privilege applies to limit or preclude disclosure of necessary evidentiary audio-video material in this case.

The ruling of the military judge, quashing the Government subpoena, is vacated. The record of trial is returned to the Judge Advocate General of the Navy for submission to the convening authority for further proceedings consistent with the preceding opinion.

Chief Judge O'TOOLE and Senior Judge MITCHELL concur.