UNITED STATES, Appellee

v.

Frank D. WUTERICH, Staff Sergeant
U.S. Marine Corps, Appellant

No. 08-6006

Crim. App. No. 200800183

AND

CBS BROADCASTING INC., Petitioner

v.

NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS,
THE UNITED STATES OF AMERICA, and
Frank D. WUTERICH, Staff Sergeant, U.S. Marine Corps,
Respondents

No. 08-8020/MC

AND

In re Frank D. WUTERICH

No. 08-8021/MC

United States Court of Appeals for the Armed Forces

Argued September 17, 2008

Decided November 17, 2008

EFFRON, C.J., delivered the opinion of the Court, in which BAKER and STUCKY, JJ., joined.  RYAN, J., filed a separate dissenting opinion, in which ERDMANN, J., joined.

<u>Counsel</u>

For Appellant/Petitioner Wuterich:  Lieutenant Kathleen L. Kadlec, JAGC, USN (argued); Colonel Dwight H. Sullivan, USMCR, and Major Christian J. Broadston, USMC (on brief).

For Petitioner CBS Broadcasting Inc.:  Lee Levine, Esq. (argued); Seth D. Berlin, Esq. (on brief).

For Appellee/Respondent United States:  Lieutenant Timothy H. Delgado, JAGC, USN (argued).

For Amicus Curiae in Support of Petitioner CBS Broadcasting Inc.:  Clifford M. Sloan, Esq., Amy R. Sabin, Esq., and David W. Foster, Esq. (on brief), Skadden, Arps, Slate, Meagher & Flom LLP.

Military Judge:  Jeffrey G. Meeks

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge EFFRON delivered the opinion of the Court.

The present case concerns three filings arising out of United States v. Wuterich, a pending court-martial convened at Camp Pendleton, California. United States v. Wuterich, No. 08-6006, is a petition for grant of review under Article 67(a)(3), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867(a)(3) (2000), filed by Staff Sergeant (SSgt) Frank D. Wuterich (Appellant), the accused in the pending court-martial. In re Wuterich, No. 08-8021, is a petition for extraordinary relief filed by SSgt Wuterich under the All Writs Act, 28 U.S.C. § 1651(a) (2000). CBS Broadcasting Inc. v. United States, No. 08-0820, is a petition for extraordinary relief filed by CBS Broadcasting Inc., the recipient of a subpoena in the pending court-martial. On September 17, 2008, we held a consolidated hearing on these three filings.

The consolidated cases involve a ruling by the military judge in the pending court-martial. See infra Part I. Appellant faces charges of voluntary manslaughter and other offenses related to the deaths of civilians in Haditha, Iraq. During the period in which the civilian deaths were under investigation, Appellant provided an interview to CBS Broadcasting Inc. regarding the events on the date of and in the place of the charged offenses. CBS subsequently broadcast a portion of the interview as part of the 60 Minutes television

3

program.  The Government issued a subpoena to CBS that included a request for the outtakes -- the portions of the interview given by Appellant that were not included in the broadcast.  CBS declined to provide the outtakes and filed a motion to quash the subpoena.  The military judge, without reviewing the content of the outtakes, granted the motion to quash the subpoena.  The Government appealed under Article 62, UCMJ, 10 U.S.C. § 862 (2000), which provides authority for interlocutory government appeals similar to the authority available in federal civilian criminal prosecutions under 18 U.S.C. § 3731 (2000).

The present appeal primarily involves two issues.  First, whether the military judge's ruling is subject to appeal under Article 62.  Second, whether the military judge erred by granting the motion to quash the subpoena without first conducting an in camera review of the contents of the requested material.

This Court consistently has looked to the decisions of the federal courts under section 3731 for guidance in interpreting the parallel provisions of Article 62.  See infra Part III.B.1. Under those decisions, which provide important guidance limiting such review, a ruling that quashes a subpoena is subject to interlocutory appellate review.  See infra Part III.B.2. Likewise, those decisions provide guidance as to the circumstances in which it is appropriate for the trial court to

4

conduct an in camera review.  See infra Part III.D.  For the reasons set forth below, we conclude that the ruling of the military judge was subject to appeal under Article 62.  We further conclude that it was an abuse of discretion for the military judge to quash the subpoena without first conducting an in camera review of the requested materials.  In our decretal paragraph, we order the military judge to review the requested material prior to ruling on the motion to quash the subpoena.

Part I summarizes the circumstances leading up to the current appeal.  Part II describes the issues set forth in each of the filings.  Part III discusses the procedural and substantive issues raised by the filings.  Part IV sets forth our decision.

## I.  BACKGROUND

A.  THE CHARGES AT THE PENDING COURT-MARTIAL

The trial of SSgt Wuterich concerns the alleged unlawful killing of civilians during military operations in Haditha, Iraq, on November 19, 2005.  During an investigation into the events in Haditha, Appellant provided a statement on February 21, 2006, concerning this incident and his role.

Following further investigation, charges against Appellant were referred for trial by court-martial on December 27, 2007.  The pending charges allege dereliction of duty, voluntary

manslaughter, aggravated assault, reckless endangerment, and obstruction of justice, offenses under Articles 92, 119, 128, and 134, UCMJ, 10 U.S.C. §§ 892, 919, 928, 934 (2000).

B.  STATEMENTS PROVIDED BY APPELLANT TO CBS REGARDING THE CHARGED OFFENSES

On March 18, 2007, the CBS television program 60 Minutes broadcast a segment entitled "The Killings in Haditha; Staff Sergeant Frank Wuterich discusses what the Marines did the day 24 Iraqi civilians were killed."  At the outset of the broadcast, the CBS correspondent offered the following introduction:

> On November 19th, 2005, a squad of United States Marines killed 24 apparently innocent civilians in an Iraqi town called Haditha. The dead included men, women and children as young as two.  Iraqi witnesses say the Marines were on a rampage, slaughtering people in the street and in their homes. And in December, four Marines were charged with murder.  Was it murder?  Was Haditha a massacre?  A military jury will decide, but there's no question that Haditha is symbolic of a war that leaves American troops with terrible choices.  The Marine making those choices in Haditha was a 25-year-old sergeant named Frank Wuterich.  He's charged with 18 murders, the most by far, and he's accused of lying on the day that it happened.  Wuterich faces life in prison. None of the Marines charged with murder has spoken publicly about this, but tonight Staff Sergeant Wuterich says he wants to tell the truth about the day he decided who would live and who would die in Haditha.

The segment included questions to Appellant by CBS correspondent Scott Pelley, statements by Appellant, observations by Mr. Pelley regarding Appellant's statements, other commentary by Mr. Pelley, and statements by other individuals.  The segment consisted of about one-half hour of broadcast time.

The statements broadcast by CBS were made during an on-camera interview with Appellant conducted by Mr. Pelley in October 2006.  According to Mr. Pelley, "During our interview, Staff Sergeant Wuterich recounted the events of the incident at Haditha."  The precise length of Appellant's interview with CBS is not set forth in the record.  Defense counsel indicated on the record that the interview lasted for "hours," and the military judge referred to representations that there were "several hours" of outtakes.  These statements have not been challenged on appeal.  Subsequent to Appellant's meeting with Mr. Pelley, CBS selected portions of the interview for presentation during the broadcast.

C.    THE SUBPOENA FOR APPELLANT'S STATEMENTS TO CBS

The prosecution issued a subpoena to CBS, dated January 16, 2008.  See Rule for Courts-Martial (R.C.M.) 703.  In pertinent part, the subpoena required CBS "to deliver any and all video and/or audio tape(s), to include out-takes and raw footage, of any and all interviews and/or statements, oral comments, and/or oral communications or nonverbal acts, actions, and/or

7

acknowledgements made by Staff Sergeant Frank D. Wuterich, United States Marine Corps, recorded by or for, or in the possession of, CBS News." The subpoena also noted that "SSgt Frank D. Wuterich is a criminal defendant and any/all statements made by him or his defense counsel concerning his actions could be deemed to be admissions and admissible at the trial of the facts . . . ."

CBS moved to quash the portion of the subpoena that sought production of the unaired footage. In support of the motion, CBS cited R.C.M. 703(f)(4)(C), which authorizes the military judge to require that a subpoena be withdrawn or modified if it is "unreasonable or oppressive." CBS also contended that the subpoena should be quashed because the Government could not meet its burden of showing that production of the unaired footage was required under "a qualified reporter's privilege that is rooted in both the First Amendment . . . and the common law." As an alternative to the motion to quash the subpoena, CBS moved that the military judge issue "a protective order, pursuant to R.C.M. 701(g)(2), precluding the Government from obtaining the materials sought by the subpoena." CBS agreed to provide and authenticate a copy of the segment broadcast on 60 Minutes.

Responding to the CBS motion, the prosecution asserted that the subpoena reflected a good faith determination that the outtakes contained admissions from Appellant that were relevant,

material, and necessary. The prosecution contended that the existence of a reporter's privilege represented a minority view among the federal courts and that, even under the rulings of those courts that had found a qualified privilege, the subpoena should not be quashed.

The prosecution and CBS submitted detailed briefs to the military judge, including appendices directed to the question of whether the information sought in the outtakes was cumulative of evidence otherwise in the Government's possession. The military judge reviewed the 60 Minutes broadcast, but he did not obtain and review the unaired outtakes that were the subject of the motion to quash.

The defense did not submit a brief on the CBS motion to quash. When the military judge asked whether the defense had a position on the motion to quash, defense counsel responded: "No, Your Honor."

During a subsequent colloquy with trial counsel, the military judge commented to trial counsel that after viewing the 60 Minutes broadcast, "I'm having a hard time seeing what it is you think that's there that's not already there." Trial counsel responded that the outtakes could provide the prosecution with the following information about Appellant's broadcast statements:

> The background to those comments. The
> backdrop for his rational[e]. The in-
> context expressions of the accused in the
> context of the interview. Not the snippets.
> Not the sound bites. Not the portion that
> has been edited for broadcast. But the
> context. The totality of his expressions of
> his conduct, and his rational[e] for his
> conduct and the conduct on the part of his
> Marines.

The military judge then asked defense counsel what position the defense would take at trial if the prosecution offered into evidence Appellant's statements from the 60 Minutes broadcast. Defense counsel responded that he would object if the prosecution sought to admit only the broadcast portions of the interview: "I would assert the doctrine of completeness [under] M.R.E. 106 and ask that it all be there for context." At that point, the military judge asked counsel for CBS what position CBS would take if the defense asked for the complete interview. Counsel for CBS responded that "we would, I suspect, file a similar motion to quash," depending on the state of the record at the time, among other factors. He further noted that the burden to overcome the privilege asserted by CBS would rest with the defense, although the balance might be different in the context of a defense request.

Defense counsel requested permission to address the issue, noting that the defense was not "requesting that these outtakes be admitted [at] trial." Defense counsel further emphasized

that "we are not a party to the dispute that's going on today. And we are also not required to assist the government in acquiring its evidence or the evidence it thinks it needs. That's never our duty . . . ."

The military judge did not indicate how he might rule if the defense were to offer a motion to compel introduction of the interview outtakes under Military Rule of Evidence (M.R.E.) 106. Instead, he indicated that he would provide both the prosecution and counsel for CBS with the opportunity to brief that issue should it arise in the future.

At the conclusion of arguments on the motion, the military judge granted the motion to quash the subpoena on the grounds that "the requirement of necessity has not been met." See R.C.M. 703(f)(1) ("Each party is entitled to the production of evidence which is relevant and necessary."). The military judge took note of "the representation that there are several hours of outtakes in the possession of CBS which contain information concerning the accused's view of the events that occurred on the 19th of November of 2005." He also observed that the outtakes "could be admissible into the evidence as statements of the accused under Military Rule of Evidence 801(d) [admissibility of statements by a party-opponent]." The military judge concluded, however, that "with respect to the outtakes, the contents of the accused's comments are speculative at this point and the court

11

is concerned that the subpoena in this case likely qualifies as a fishing expedition."

The military judge determined that production of the requested information was not necessary because "the information desired here by the government from CBS would be cumulative with what is already in the hands of the government." See R.C.M. 703(f)(1) Discussion (noting, in the nonbinding commentary accompanying the rule, that "[r]elevant evidence is necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue"). In the course of reaching his conclusion on cumulativeness, the military judge considered the availability to the prosecution of statements by Appellant broadcast in the 60 Minutes segment; other statements made by Appellant prior to trial; statements made by members of his unit; and the forensic evidence, photographs, and other physical evidence obtained from the scene of the charged offenses.

The military judge also addressed the question of whether CBS could rely on a newsgathering privilege, stating that he was persuaded that such a privilege existed "under federal common law." He added, however, that it was not necessary to base his decision on such a privilege because any motion to quash that met the "lower standard" of R.C.M. 703 would necessarily meet

"the greater standard required for disclosure" under a qualified reporter's privilege.

The prosecution asked the military judge to reconsider his ruling "and order an in camera inspection to determine whether or not the material in question is in fact cumulative . . . given the fact that the military judge had not had an opportunity to review" the material. See R.C.M. 703(f)(4)(C) (providing that when the recipient of a subpoena requests relief, "the military judge may direct that the evidence be submitted to the military judge for an in camera inspection to determine whether such relief should be granted"). The military judge denied the motion without explanation. The Government appealed the ruling to the Court of Criminal Appeals under Article 62, UCMJ, 10 U.S.C. § 862 (2000). The United States Navy-Marine Corps Court of Criminal Appeals vacated the ruling of the military judge and remanded the case for further proceedings. United States v. Wuterich, 66 M.J. 685, 691-92 (N-M. Ct. Crim. App. 2008).

## II. THE PENDING PROCEEDINGS

The present consolidated case addresses three pending filings that seek review of the decision by the Court of Criminal Appeals. In United States v. Wuterich, No. 08-6006, Appellant has filed a petition for grant of review under Article

13

67(a)(3), UCMJ. On Appellant's petition, we have granted review

of the following issues:

> I. Whether the lower court erred in holding that it has jurisdiction to entertain the Government's challenge of a discovery ruling pursuant to Article 62, UCMJ.

> II. Whether the lower court erred in holding that the Appellant did not have standing as petitioner/appellee and thereby violated Appellant's statutory and constitutional right to counsel.

In a related case, In re Wuterich, No. 08-8021, Appellant

filed a petition for extraordinary relief under 28 U.S.C. §

1651(a), as an alternative, in the event that we determined

Appellant lacks standing to appeal under Article 67(a)(3), UCMJ.

In view of our determination, infra Part III.A., that Appellant

has standing to appeal under Article 67(a)(3), UCMJ, we deny the

writ petition as moot.

The third filing, CBS Broadcasting Inc. v. United States,

No. 08-0820, is a petition for extraordinary relief to obtain

review of the decision by the Court of Criminal Appeals. CBS

filed this writ as an alternative to reliance on Appellant's

petition for grant of review under Article 67(a)(3), UCMJ, as

the vehicle for reviewing the decision of the court below. In

the writ petition, CBS suggested that the merits of the decision

by the lower court could be addressed properly during

consideration of Appellant's petition for review under Article

67(a)(3), UCMJ.  We agree, and deny the CBS writ petition as moot.

The Government appeal under Article 62 automatically stayed the proceedings before the court-martial pending disposition by the Court of Criminal Appeals.  See R.C.M. 908(b)(4).  The Court of Criminal Appeals subsequently returned the case for further proceedings before the court-martial.  66 M.J. at 691-92.  Our Court has not ordered a stay of the pending court-martial proceedings.  See R.C.M. 908(c)(3).  Neither party has asked us to issue a stay or otherwise take action with respect to the status of the court-martial.

## III.  DISCUSSION

In the present case, Appellant -- knowing of the investigation into the events in Haditha -- granted an interview to CBS Broadcasting Inc.  CBS, which was aware of the ongoing investigation, focused the interview on the events occurring on the date and in the place of the matters under investigation. CBS broadcast some, but not all, of the statements made by Appellant during the interview.  In the nationally televised 60 Minutes program, CBS stated that Appellant wanted "to tell the truth about the day he decided who would live and who would die in Haditha."

15

At this stage in the appellate proceedings, Appellant neither contests the voluntariness of the statements made during his CBS interview about the events in Haditha nor claims any privilege that would preclude use of his statements to CBS in the pending court-martial.  The majority of the statements made by Appellant during the CBS interview, however, are not now available for introduction into evidence at the court-martial.  In response to a Government subpoena for tapes of Appellant's entire interview, CBS produced only the broadcast portion.  It declined to provide the court-martial with the outtakes, which contained the majority of Appellant's interview statements.

On the record before us, only CBS has access to Appellant's full interview regarding the events in Haditha.  Only CBS -- an entity that is not a party to the pending court-martial -- is in a position to assess whether the statements in the outtakes are exculpatory, inculpatory, or otherwise necessary to enhance the significance of other statements made by Appellant.

The military judge ruled that the Government could not have access to the majority of statements made by the accused in his interview because the military judge concluded that those statements -- which he had not reviewed -- were cumulative in relationship to other evidence available to the Government.  The military judge did not explain on the record how he was able to

assess the content and quality of statements contained in the outtakes that he had not reviewed.

Appellant and Petitioner-CBS each contend that the military judge's ruling was not appealable under Article 62, UCMJ, the statute governing prosecution appeals. Further, each contends that the ruling by the military judge, even if subject to appeal, did not constitute an abuse of discretion. In addition, Appellant contends that the lower court erred in ruling that he did not have standing to participate in the appellate proceedings. Section A of this discussion addresses standing. Section B discusses government appeals in criminal cases. Section C considers the Government appeal in the present case. Section D discusses the military judge's decision that production of the outtakes was not necessary because the evidence therein was cumulative. Section E addresses further proceedings.

## A. STANDING

After the military judge quashed the Government's subpoena, the Government filed an appeal under Article 62, UCMJ. Appellant filed a motion to dismiss on the grounds that the military judge's ruling was not appealable under Article 62, UMCJ.

The Court of Criminal Appeals declined to consider Appellant's filings on the grounds that Appellant had no

17

standing to participate in the Government's appeal under Article 62, UCMJ.  Wuterich, 66 M.J. at 688-89.  The Court of Criminal Appeals noted that defense counsel had asserted at trial that SSgt Wuterich was not a party to the dispute between CBS and the Government.  Id. at 688.  The court primarily relied on cases involving the concept of standing under the Fourth Amendment, as well as cases involving privileges and third-party subpoenas. See id. at 688-89.

The jurisdictional concept of standing normally concerns the limitation of the judicial power of the United States to "[c]ases" and "[c]ontroversies."  U.S. Const. art. III, § 2. See, e.g., Sprint Communc'ns Co. v. APCC Servs., Inc., 128 S. Ct. 2531, 2535 (2008) (summarizing the requirements for a plaintiff in civil litigation to establish standing -- an injury in fact, causation, and redressability).  This Court, which was established under Article I of the Constitution, has applied the principles from the "cases" and "controversies" limitation as a prudential matter.  See United States v. Chisholm, 59 M.J. 151, 152 (C.A.A.F. 2003).

The evidentiary concept of standing in criminal cases concerns the issue of whether a defendant has a sufficient interest in the object of a search, a claim of privilege, or other evidentiary matter to prevail on the merits of the objection.  See, e.g., Rakas v. Illinois, 439 U.S. 128, 134-40

(1978); United States v. Johnson, 53 M.J. 459, 461-62 (C.A.A.F. 2000); United States v. Jones, 52 M.J. 60, 63-64 (C.A.A.F. 1999).  These cases involve the criteria used to assess the merits of a criminal defendant's evidentiary claims, not the right of a defendant to participate as a litigant in the assessment of those claims.

Appellant did not initiate the present litigation.  He is a defendant in a criminal case brought by the United States. Trial defense counsel's comment regarding the dispute between the Government and CBS was offered in the context of counsel's position that the defense had no obligation to assist the Government in obtaining the evidence from CBS.  Defense counsel expressly addressed the interest of Appellant in the requested material under the rule of completeness of M.R.E. 106.  See supra Part I.C.  The position articulated by trial defense counsel before the military judge underscores the direct interest of Appellant in the scope of any ruling at trial or on appeal regarding the evidence that would be available for consideration at this trial.

Appellant sought to persuade the Court of Criminal Appeals that the military judge's order was not subject to appeal under Article 62, and that the case should proceed with a trial on the merits.  In so doing, Appellant invoked his direct interest in prompt disposition of the charges, a matter expressly addressed

in Article 62, UCMJ. Although it would have been appropriate for the Court of Criminal Appeals to consider the relationship of Appellant to the requested material for purposes of assessing how much weight, if any, to accord Appellant's views on the motion to quash the subpoena, it was not appropriate to deprive him altogether of the opportunity to participate in appellate litigation having direct consequences on the prompt disposition of criminal proceedings brought against him by the United States.

As a result of the lower court's erroneous view of standing, Appellant did not have the opportunity to participate in the appellate proceedings before that court. Under these circumstances, we vacate the decision of the court below in our decretal paragraph. In view of the pending court-martial proceedings, and because this case involves an issue of law that does not pertain to the unique factfinding powers of the Court of Criminal Appeals, we shall review directly the decision of the military judge without remanding the case to the lower court. See United States v. Shelton, 64 M.J. 32, 37 (C.A.A.F. 2006) ("When reviewing a decision of a Court of Criminal Appeals on a military judge's ruling, we typically have pierced through that intermediate level and examined the military judge's ruling, then decided whether the Court of Criminal Appeals was

20

right or wrong in its examination of the military

judge's ruling.") (citations and quotation marks omitted).

## B.  GOVERNMENT APPEALS IN CRIMINAL CASES

Federal courts, including courts in the military justice

system established under Article I of the Constitution, are

courts of limited jurisdiction.  See United States v. Lopez de

Victoria, 66 M.J. 67, 69 (C.A.A.F. 2008) (noting that such

jurisdiction "is conferred ultimately by the Constitution, and

immediately by statute").  In criminal cases, prosecution

appeals are not favored and are available only upon specific

statutory authorization.  See 7 Wayne R. LaFave et al., Criminal

Procedure § 27.3(a)-(b) (3d. ed. 2007); United States v. Watson,

386 F.3d 304, 307 (1st Cir. 2004).  The constitutional

prohibition on double jeopardy and related statutory

considerations severely limit post-trial appeals by the

prosecution in contrast to the broad appellate rights of the

defense following the conclusion of trial.  See 7 LaFave, supra,

§ 27.3(a).  In view of these limitations, the prosecution as a

general matter has a somewhat broader opportunity than the

defense to file appeals during the trial.  See id. § 27.3(c).

Congress has authorized interlocutory government appeals in

federal civilian criminal cases under 18 U.S.C. § 3731 (2000).[1]

---

[1] The current version of 18 U.S.C. § 3731 provides:

Congress also has authorized interlocutory prosecution appeals in cases tried by courts-martial under Article 62, UCMJ, 10 U.S.C. § 862.[2]

---

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
>
> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.
>
> An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.
>
> The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.
>
> The provisions of this section shall be liberally construed to effectuate its purposes.

[2] The current version of Article 62, UCMJ, provides:

> (a)(1) In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal the following (other than an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification):
>     (A) An order or ruling of the military judge which terminates the proceedings with respect to a charge or specification.
>     (B) An order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding.
>     (C) An order or ruling which directs the disclosure of classified information.
>     (D) An order or ruling which imposes sanctions for nondisclosure of classified information.
>     (E) A refusal of the military judge to issue a protective order sought by the United States to prevent the disclosure of classified information.

22

1.   The relationship between Article 62, UCMJ, and 18 U.S.C. § 3731

Congress provided authority for interlocutory government appeals under Article 62, UCMJ, in the Military Justice Act of 1983, Pub. L. No. 98-209, § 10, 97 Stat. 1393 (1983).  Congress based the legislation on 18 U.S.C. § 3731, the statute applicable to the trial of criminal cases in the federal district courts.  See S. Rep. No. 98-53, at 6 (1983) (stating that Article 62 "allows appeal by the government under procedures similar to an appeal by the United States in a federal civilian prosecution"); id. at 23 (stating that "[t]o the extent practicable, the proposal parallels 18 U.S.C. § 3731,

---

(F) A refusal by the military judge to enforce an order described in subparagraph (E) that has previously been issued by appropriate authority.
   (2) An appeal of an order or ruling may not be taken unless the trial counsel provides the military judge with written notice of appeal from the order or ruling within 72 hours of the order or ruling.  Such notice shall include a certification by the trial counsel that the appeal is not taken for the purpose of delay and (if the order or ruling appealed is one which excludes evidence) that the evidence excluded is substantial proof of a fact material in the proceeding.
   (3) An appeal under this section shall be diligently prosecuted by appellate Government counsel.
(b) An appeal under this section shall be forwarded by a means prescribed under regulations of the President directly to the Court of Criminal Appeals and shall, whenever practicable, have priority over all other proceedings before that court. In ruling on an appeal under this section, the Court of Criminal Appeals may act only with respect to matters of law, notwithstanding section 866(c) of this title [10 U.S.C. § 866(c)] (article 66(c)).
(c) Any period of delay resulting from an appeal under this section shall be excluded in deciding any issue regarding denial of a speedy trial unless an appropriate authority determines that the appeal was filed solely for the purpose of delay with the knowledge that it was totally frivolous and without merit.

which permits appeals by the United States in federal
prosecutions").

As Chief Judge Everett noted in United States v. Browers:

> Because the legislative history makes clear
> that Congress intended for Article 62
> appeals to be conducted "under procedures
> similar to [those governing] an appeal by
> the United States in a federal civilian
> prosecution," we look to federal precedent
> for guidance on this question.

20 M.J. 356, 359 (C.M.A. 1985) (alteration in original) (quoting
S. Rep. No. 98-53, at 6); accord Lopez de Victoria, 66 M.J. at
70-71; United States v. Brooks, 42 M.J. 484, 486 (C.A.A.F.
1995); United States v. Lincoln, 42 M.J. 315, 320 (C.A.A.F.
1995); United States v. True, 28 M.J. 1, 3 (C.M.A. 1989).

Federal court decisions interpreting 18 U.S.C. § 3731
constitute guidance, not binding precedent, in the
interpretation of Article 62, UCMJ.  When considering the import
of cases arising under 18 U.S.C. § 3731, we bear in mind that
"Congress, in enacting the revised Article 62, UCMJ, in 1983,
clearly intended to afford the government a right to appeal
which, 'to the extent practicable . . . parallels 18 U.S.C. §
3731 . . . .'"  Lopez de Victoria, 66 M.J. at 70 (first ellipsis
in original) (quoting S. Rep. No. 98-53, at 23).  In that
regard, we take into account the structural differences between
courts-martial and trials in federal district court, as well as

24

the textual similarities and differences with respect to Article 62, UCMJ, and 18 U.S.C. § 3731.

Section 3731, for example, states: "The provisions of this section shall be liberally construed to effectuate its purposes." The First Circuit, in United States v. Watson, described the legislative background of this provision. The court noted that the initial statute authorizing government appeals in federal criminal cases referred only to "motion[s] to suppress." 386 F.3d at 308-10. Following a series of judicial decisions narrowly construing this provision, Congress expanded the statute to cover all orders suppressing or excluding evidence and added the language on liberal construction to "'reverse[] the practice of narrowly interpreting'" the statute. See id. at 309 (quoting S. Rep. No. 91-1296, at 37 (1970), and citing Omnibus Crime Control Act of 1970, Pub. L. No. 91-642, § 14, 84 Stat. 1880, 1890 (1971)). With respect to the guidance drawn from cases interpreting 18 U.S.C. § 3731, we note that those cases routinely cite the liberal construction admonition in the course of addressing the scope of section 3731. E.g., Watson, 386 F.3d at 310; In re Grand Jury Empanelled (Colucci), 597 F.2d 851, 855-56 (3d Cir. 1979).

Article 62, UCMJ, on the other hand, contains no language on statutory construction, and its legislative history does not demonstrate a rationale for the omission of this language.

25

Therefore, it would be inappropriate to apply the liberal construction mandate of section 3731 when interpreting Article 62, UCMJ. This is consistent with our past practice. We have not previously applied an explicit liberal construction when interpreting Article 62, UCMJ. We treat cases interpreting parallel provisions of 18 U.S.C. § 3731 as guidance, not as mandates; and we apply that guidance only to the extent consistent with an interpretation of Article 62 that is not dependent upon the liberal construction admonition.

2.  <u>Appeals under 18 U.S.C. § 3731</u>

The issues in the present appeal concern the meaning of the term "excludes evidence" in Article 62. The statute permits the government to appeal an "order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding." Article 62(a)(1)(B), UCMJ. Under this provision, trial counsel must file a certification with the military judge "that the appeal is not taken for the purpose of delay and (if the order or ruling appealed is one which excludes evidence) that the evidence excluded is substantial proof of a fact material in the proceeding." Article 62(a)(2), UCMJ.

The related provision governing federal civilian criminal trials, 18 U.S.C. § 3731, permits the government to appeal an order by the trial court "suppressing or excluding evidence." The United States Attorney must certify "that the appeal is not

taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." Id.

The courts of appeals have addressed the meaning of the term "excluding evidence" under 18 U.S.C. § 3731 and have concluded that the term includes an order quashing a subpoena. See 25 James Wm. Moore et al., Moore's Federal Practice ¶ 617.08[4] (3d. ed. 2008); 7 LaFave, supra, § 27.3(c). The case law in this area, permitting appeal of an order quashing a subpoena, predates the enactment of Article 62, UCMJ. See, e.g., Colucci, 597 F.2d at 856.

In Watson, the First Circuit discussed the scope of the term "excluding evidence" under 18 U.S.C. § 3731. 386 F.3d at 307. The appeal involved a trial court ruling that denied a government motion for a continuance. Prior to trial, the prosecution asked immigration officials to keep the prosecution informed of the status of a potential witness. The immigration officials neglected to do so, and deported the witness. The government moved for a continuance to conduct an overseas deposition. The trial court denied the motion, noting that the case was more than three years old, there were speedy trial issues, the problem was a result of government negligence, and it could take six to twelve months to obtain the testimony by deposition. The government renewed its motion, and the trial

court denied the renewed motion for the same reasons.  Id. at

306-07.

The court of appeals concluded that the orders denying the

motions were not appealable under 18 U.S.C. § 3731 because they

were case-management orders, entered with the purpose of

preventing delay:

> Although the orders appealed from will
> certainly hamper (and may effectively
> prevent) the obtaining and subsequent use of
> [the witness's] testimony, those orders did
> not, either in substance or in form, limit
> the pool of potential evidence that would be
> admissible at the forthcoming trial. Rather,
> they were premised on, and accomplished, a
> more prosaic goal:  the lower court's
> determination to forestall further delay.
> That was why the court denied the requested
> continuance -- and the practical effect of
> that denial was to clear the way for the
> trial to proceed.  That the orders had an
> incidental effect on the government's
> evidence-gathering is too remote a
> consequence to support appellate
> jurisdiction under the second paragraph of
> section 3731.

Id. at 313.

In the course of its opinion, the court of appeals reviewed

the development of 18 U.S.C. § 3731 as well as cases applying

the provision to permit appeals of decisions "excluding

evidence."  The court concluded that an interlocutory

prosecution appeal under section 3731 is permitted when "the

order itself is the practical equivalent of a suppression or

exclusion order; that is, when the order has the direct effect

28

of denying the government the right to use evidence.  If such an effect is only incidental, then there can be no appeal."  Id. at 311.  The cases discussed in Watson in support of this test reflect a highly case-specific approach to the determination of whether the effect on the exclusion of evidence is direct or incidental.  See id. at 310-12.  Watson did not call into question any of the cases permitting government appeal of an order quashing a subpoena.

Under Watson, the pertinent inquiry is not whether the court has issued a ruling on admissibility, but instead whether the ruling at issue "in substance or in form" has limited "the pool of potential evidence that would be admissible."  Id. at 313.  The distinction drawn by Watson between direct and incidental effects underscores that the inquiry concerns the impact of the ruling on the pool of potential evidence, not whether there has been a formal ruling on admissibility.  See id. at 311-12.

3.   Limitations on appeals under Article 62, UCMJ

Appellant and Petitioner-CBS contend that the prosecution may not appeal an order quashing a subpoena under Article 62, UCMJ, irrespective of the authority for the prosecution to appeal such orders under 18 U.S.C. § 3731.  According to Appellant, Chief Judge Everett's opinion in Browers, 20 M.J. at 356, "stands for the proposition that Article 62 authorizes

prosecution appeals of orders excluding evidence only where a military judge rules that certain evidence 'is inadmissible.'"

Contrary to Appellant's assertion, Chief Judge Everett did not state that such an Article 62 appeal could take place "only" if the military judge rules that evidence "is inadmissible." Browers, like Watson, involved an appeal of a case-management ruling by the trial judge. The prosecution at trial moved for a continuance due to the absence of two witnesses. The military judge denied the motion, noting that the charges were old, one witness was not likely to be available in the near future, and the government had failed to keep track of the other witness. In Browers, Chief Judge Everett concluded that the order was not appealable because it involved the question of trial scheduling, not the exclusion of evidence. 20 M.J. at 356-60.

In the course of discussing this issue, Chief Judge Everett stated:

> Most lawyers think of exclusion of evidence as a ruling made at or before trial that certain testimony, documentary evidence, or real evidence is inadmissible. In short, "excludes" usually is a term of art; and we see no reason to believe that Congress had any different intention in drafting Article 62(a)(1).

Id. at 360.

Chief Judge Everett referred generally to what "[m]ost lawyers think" and described "excludes" as a word that "usually

30

is a term of art."  Id.  The nonexclusive nature of these observations underscores that the opinion did not provide either a formal definition or a comprehensive description of the meaning of "excludes."  In context, Chief Judge Everett's observations set the stage for his conclusion on the critical issue in the case:  denial of a continuance, in a case that had languished, involved a scheduling matter that did not amount to an exclusion of evidence.  Highlighting the case-management nature of an order denying a continuance, he stated:  "Indeed, we suspect Congress believed that the scheduling of trials should be left primarily to trial judges and reliance should be placed on their judgment."  Id. at 360.  His opinion did not establish a bright-line rule or a comprehensive definition of "excludes," nor did it otherwise hold that an order is appealable under Article 62(a)(1)(B) "only" if there is a formal ruling that evidence is inadmissible.

Appellant's argument suggests that the phrase "excludes evidence" means something different in military law than the term "excluding evidence" means in civilian criminal proceedings.  In that regard, we note that in Browers, Chief Judge Everett did not state that we should disregard decisions under 18 U.S.C. § 3731 permitting appeal even without a formal ruling on admissibility.  On the contrary, as noted above in Part III.B.1., he expressly stated that we "look to federal

31

precedent for guidance" in the interpretation of Article 62. 20 M.J. at 359. He specifically noted that the government had not identified any cases arising under 18 U.S.C. § 3731 in which denial of a continuance had been treated as an appealable order. Id. at 360.

In a subsequent dissent, Chief Judge Everett took the position that the Court in Browers "adopted a narrow construction of the statutory language." United States v. True, 28 M.J. 1, 5 (C.M.A. 1989) (Everett, C.J., dissenting). His view, however, was not joined by the other members of the Court. In that regard, we note that Browers was decided with the participation of only two Judges, Chief Judge Everett and Judge Cox. 20 M.J. at 360. Judge Cox -- who concurred separately in Browers -- did not endorse Chief Judge Everett's suggestion in True that the Court in Browers had adopted a "narrow construction" of Article 62. Instead, he joined the majority opinion in True. 28 M.J. at 4. The majority in True rejected a narrow construction of the statute, noting: "Prudent advice concerning the use of [Article 62] should not be confused with an unjustified narrowing of the scope of this statute or deliberate frustration of the will of Congress." 28 M.J. at 3.

In short, this Court's decision in Browers does not support the proposition that the term "excludes" in Article 62 refers only to a ruling that evidence is inadmissible. Likewise,

32

Browers does not support the proposition that the term
"excludes" under Article 62 should be construed more narrowly
than the term "excluding" under section 3731.  On the contrary,
Browers expressly identified case law under section 3731 as an
important source of guidance in interpreting Article 62.  The
text of Article 62 does not reflect that Congress used the word
"exclude" as a term of art limited to formal rulings on
admissibility.  Cf. Articles 43(d), 57(b), 120(s), UCMJ, 10
U.S.C. §§ 843(d), 57(b), 120(s) (2000) (using the terms
"excluded" and "excluding" in various legal contexts to convey
descriptive meanings different from the concept of
admissibility).  Compare Watson, 386 F.3d at 313 (describing a
ruling "excluding evidence" under section 3731 as one "that
would, either in substance or in form, limit the pool of
potential evidence that would be admissible").  We agree with
the approach taken in Watson, which focused on the pool of
potential evidence, not a formal ruling on admissibility.  See
supra Part III.B.2.

    The legislative history of Article 62, UCMJ, also does not
reflect that Congress intended the word "exclude" to be a term
of art limited to rulings on admissibility.  Congress, in
drafting Article 62, UCMJ, did not focus on the word "excludes"
or "excluding."  To the extent that the state of the law at the
time of enactment illuminates congressional intent, we note that

33

the Colucci case applying 18 U.S.C. § 3731 to an order quashing a subpoena predated enactment of Article 62, UCMJ, by several years. See Colucci, 597 F.2d at 855-56. We need not rely on that point, however, but instead focus on the meaning of the word "exclude" in the context of the similar wording in section 3731 ("excluding") and Article 62 ("excludes"). We also focus on the purpose of Article 62, UCMJ, reflected in its structure and legislative history, to provide the government in military cases with the same interlocutory appeal authority as in civilian criminal cases, "to the extent practicable." See S. Rep. No. 98-53, at 23 (1983); cf. Article 36, UCMJ, 10 U.S.C. § 836 (2000) (authorizing the President to prescribe pretrial, trial, and post-trial procedural and evidentiary rules that follow the rules for trials in federal district courts insofar as the President deems practicable).

We conclude that application of guidance from the federal court decisions under 18 U.S.C. § 3731 is both practicable and appropriate. Under that guidance, a ruling quashing a subpoena is appealable under Article 62, UCMJ. We have specifically taken into account, and apply, the guidance from cases under 18 U.S.C. § 3731 restricting interlocutory government appeals to those rulings that have a direct rather than incidental effect on the exclusion of evidence. See supra Part III.B.2. In reaching this conclusion, we have considered the differences

34

between courts-martial and civilian trials, particularly the emphasis in military law on prompt disposition of trials and appeals, and the accelerated time frames in Article 62. Compare, e.g., Article 62(a)(2), UCMJ, with 18 U.S.C. § 3731. See, e.g., Manual for Courts-Martial, United States, pt. I, para. 3 (2008 ed.); R.C.M. 908. Appellate courts in the military justice system are required to give priority to cases arising under Article 62 whenever practicable. See Article 62(b); C.A.A.F. R. 19(a)(7)(A). In the present case, we note that this Court has not issued a stay of the court-martial proceedings. See R.C.M. 908(c)(3). Neither party has asked us to issue a stay or otherwise take action with respect to the status of the court-martial. See supra Part II.

The experience in federal civilian courts underscores the infrequency of government appeals from orders quashing subpoenas and the effectiveness of judicial interpretations of 18 U.S.C. § 3731 in that regard. In a section 3731 appeal, as in an appeal under Article 62, the prosecution must certify that the appeal is not taken for purposes of delay and that the evidence is a substantial proof of a fact material in the proceedings. Section 3731 has been interpreted to apply only to rulings that have a direct rather than an incidental effect of excluding evidence. See, e.g., Watson, 386 F.3d at 311-13. The interpretation set forth in Watson, which we apply in the

context of Article 62, provides a significant limitation on the availability of government appeals. We have no reason to anticipate that application of that interpretation in the military justice system should differ with respect to the relative infrequency of government appeals. Application of that interpretation to review of the specific ruling at issue here -- the military judge's decision to quash a subpoena requesting statements by the accused to the news media regarding events on the date of and in the place of the incident under investigation -- is not likely to have an appreciable effect on the volume of prosecution appeals under Article 62. In light of the text, the legislative history, the decisions and experiences of courts applying the parallel provisions of 18 U.S.C. § 3731, and considerations of practicability, we conclude that the term "excludes evidence" in military law is not different from the term "excluding evidence" in federal civilian proceedings with respect to an interlocutory appeal of a decision to quash a subpoena for the production of evidence.

### C.  THE APPEAL IN THE PRESENT CASE

The question before us is not simply the generic question of whether Article 62, UCMJ, permits appeal of a motion quashing a subpoena, but whether the ruling at issue in this case had the direct effect of excluding evidence. In resolving that issue, we consider whether the military judge's ruling directly limited

36

the pool of potential evidence that would be admissible at the court-martial.  See Watson, 386 F.3d at 313.  Appellant contends that the prosecution cannot appeal because the prosecution has not demonstrated that the outtakes contain any relevant, admissible evidence, contending that "the Government's assertions as to what might be contained in the CBS outtakes were mere speculation."  The record before us, however, demonstrates that the outtakes contain statements by Appellant about the charged crimes, focusing on the events that transpired on the day and in the place of the alleged offenses.  See supra Part I.B.  Appellant also contends that the ruling is not appealable because "the 'admissions' that the Government speculates are in the outtakes are available from a number of other sources."  However, the question of whether the material in the outtakes is cumulative goes to the merits of the ruling by the military judge, not whether that ruling is appealable. See infra Part III.D.

According to Appellant, the military judge's ruling did not exclude evidence from the court-martial:  "If the government ultimately obtains these outtakes through negotiation with CBS News or alternative means, it [sic] may well be admissible."  On the record before us, CBS has sole possession and control of the outtakes.  The record does not establish the existence of any

negotiations or "alternative means" through which the Government could obtain the outtakes.

The record reflects that CBS does not believe that it is appropriate to provide the outtakes to the prosecution. CBS has litigated vigorously a motion to quash the subpoena as well as the present appeal. As part of that litigation, CBS has submitted a declaration from its correspondent, Mr. Pelley, asserting a variety of negative consequences to the newsgathering function that would follow "if reporters were to become known as willing or unwilling investigative agents for the Government." Under these circumstances, the record establishes that the military judge's decision had the direct effect of excluding the outtakes from the pool of potential evidence that would be admissible at the court-martial.

In a related argument, Appellant and Petitioner-CBS suggest that the military judge's decision to quash the subpoena is not appealable in this case because the military judge did not foreclose future consideration of the admissibility of the outtakes. The military judge, however, discussed that possibility in the context of a contingency under the control of the defense. During litigation of the motion to quash the subpoena at trial, the military judge asked trial defense counsel if he would object to introduction into evidence of the broadcast statements made by the accused. Defense counsel

reserved the right to object under M.R.E. 106, the rule of completeness, which provides, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  See also M.R.E. 304(h)(2) (providing a rule of completeness in connection with an alleged admission or confession).

The rule of completeness is a rule that benefits the party opposing admission of evidence, not the party offering the evidence.  Assuming that the prosecution moves to admit the broadcast statements, the defense would not be obligated to object under the rule of completeness.  Defense counsel emphasized during discussion of the motion to quash the subpoena that the defense was "not required to assist the government in acquiring its evidence or the evidence it thinks it needs," and that defense counsel was not "required to anticipate what the government might try to do and announce all of my objections." Likewise, it is not possible to know at this stage whether the interests of Appellant in presenting the most effective defense in his trial by court-martial and the interests of CBS as a newsgathering entity will be similar or different during trial on the merits.

At this stage in the proceedings, the possibility of a future ruling on admissibility of the outtakes under the rule of completeness rests with the defense. Moreover, without having the content of the outtakes in the record, there is no way of knowing which parts, if any, of the outtakes would be covered by the rule of completeness. Under these circumstances, the contingent possibility that an opposing party might raise an objection that could resurrect the need for a subpoena, which is dependent on multiple variables, does not diminish the direct effect of the ruling excluding the outtakes.

In the present case, the military judge ruled that the evidence requested in the subpoena was cumulative with the evidence otherwise available to the prosecution. See supra Part I.C. In so doing, he focused specifically on the pool of potential evidence that would be admissible at the court-martial. As such, his decision to quash the subpoena was appealable under Article 62, UCMJ, because it had a direct effect on whether the outtakes would be excluded from consideration at the court-martial.

D.  THE MILITARY JUDGE'S DECISION TO QUASH THE SUBPOENA

The question before us is whether the military judge in this case erred when he granted the motion to quash the subpoena on the grounds that it was unnecessary without reviewing in camera the evidence requested. See supra Part I.C.; R.C.M.

40

703(f)(1).  We review the military judge's decision under an abuse of discretion standard.  See United States v. Reece, 25 M.J. 93, 95 (C.M.A. 1987).

In trials by courts-martial, "[t]he trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."  Article 46, UCMJ, 10 U.S.C. § 846 (2000).  The President has provided that the parties and the court-martial "shall have equal opportunity to obtain witnesses and evidence, including the benefit of compulsory process."  R.C.M. 703(a).  Under R.C.M. 703(f)(1), "Each party is entitled to the production of evidence which is relevant and necessary."  M.R.E. 401 establishes "a low threshold of relevance."  Reece, 25 M.J. at 95 (quoting United States v. Tomlinson, 20 M.J. 897, 900 (A.C.M.R. 1985)).  As noted in the nonbinding Discussion accompanying R.C.M. 703(f)(1):  "Relevant evidence is necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue."  See Reece, 25 M.J. at 95.

R.C.M. 703(f)(4)(C) provides:  "If the person having custody of evidence requests relief on grounds that compliance with the subpoena or order of production is unreasonable or oppressive . . . the military judge may direct that the subpoena

41

or order of production be withdrawn or modified." Under the rule, "the military judge may direct that the evidence be submitted to the military judge for an in camera inspection in order to determine whether such relief should be granted."

Reece considered these provisions on direct review of a case in which the military judge had declined to review in camera the social service and counseling records of two witnesses. 25 M.J. at 94-95. The defense at trial had asserted that records of drug and alcohol abuse, as well as behavioral problems, were relevant to the credibility of the witnesses. On appeal, this Court observed that the credibility of the two witnesses was a key issue at trial and that the appellant had "made as specific a showing of relevance as possible, given that he was denied all access to the documents." Id. at 95. Under the circumstances of the case, Reece held that the military judge erred in not conducting an in camera review of the requested materials, and remanded the case for in camera inspection by a military judge under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). 25 M.J. at 95; cf. United States v. Cuthbertson, 630 F.2d 139, 145-46, 148-49 (3d Cir. 1980) (holding that the trial judge did not err in requiring an in camera review of trial witness statements when there was a showing of relevancy, necessity, and specificity, but erred in

requiring an in camera review of non-witness statements without such a showing).

In the present case, Appellant argues that the military judge did not err in quashing the subpoena because "[t]here is no reason to believe that there are material statements in excess of what CBS aired on March 17, 2007, as Petitioner's [Appellant's] statements are relatively uniform and indicative of his subjective intent."  Appellant further contends that --

> the government also has a wealth of
> additional evidence that can be used to
> demonstrate [Appellant's] specific intent,
> including forensic evidence, the testimony
> of all of [Appellant's] squad members, and
> secondary evidence.  The testimony of
> Appellant's squad members is indicative of
> his specific intent, as he trained his squad
> on the rules of engagement and their
> understanding of the rules of engagement
> mirrors his.  Appellant's subjective intent
> is clear from his multiple statements -- he
> declared the buildings and anyone within
> hostile and authorized the use of force.  He
> repeatedly admitted to telling them to
> "shoot first and ask questions later."

(citations omitted).  In similar fashion, Petitioner-CBS notes that the record is replete with other evidence available to the Government on the contested issues in the court-martial. Petitioner-CBS further suggests that an in camera review of the outtakes is unnecessary because "it is typically the case that the most relevant and important information is included in the publicly disseminated news report."

As we have noted earlier, Appellant granted an interview with CBS in which he specifically described events at the time and in the place of the charged offenses. CBS conducted the interview knowing that it involved matters then under investigation. The interview lasted for several hours, but only a portion of the interview was aired by CBS. The outtakes contain a majority of Appellant's discussion of the charged offenses with CBS, and only CBS possesses those outtakes. See supra Part I.B-C.

At this stage in the proceedings, Appellant has pled not guilty. Therefore, the issues of his specific intent and other key elements of the offenses remain in dispute. On the record before us, the case involves both direct and circumstantial evidence, including statements by Appellant. Both the prosecution and the defense will have the opportunity to demonstrate the inculpatory or exculpatory value of evidence that is introduced with respect to the charged offenses. Under those circumstances, the level of detail, the context, and the credibility of the evidence is likely to be at issue.

In that setting, the decisions made by CBS as to what was relevant and important to include in a nationally broadcast news story are not the same as the judgment by the parties to the court-martial of what might be relevant and necessary in the trial of the pending case, which includes both general crimes

44

and unique military offenses.  Likewise, Appellant's assessment that his statements in the record reflect a consistent expression of intent is a matter that, at this stage in the proceedings, is likely to be subject to evaluation by the factfinder at trial.  Moreover, Appellant's assessment does not describe the content of the statements in the outtakes.

In Cuthbertson, the Third Circuit addressed similar considerations in a case where a news organization sought to resist a subpoena that requested, in part, material containing "verbatim and substantially verbatim statements . . . of witnesses that the government intends to call at trial."  630 F.2d at 148.  In sustaining the decision of the trial judge to order production of that material for in camera inspection, the court observed:

> By their very nature, these statements are
> not obtainable from any other source.  They
> are unique bits of evidence that are frozen
> at a particular place and time.  Even if the
> defendants attempted to interview all of the
> government witnesses and the witnesses
> cooperated with them, the defendants would
> not obtain the particular statements that
> may be useful for impeachment purposes at
> trial.

Id.; accord United States v. LaRouche, 841 F.2d 1176, 1180 (1st Cir. 1988) (sustaining the trial judge's decision to order production of outtakes of a news media interview with a key trial witness).

45

The outtakes of the CBS interview of Appellant about the events in Haditha on the date of the charged offenses, like the material at issue in Cuthbertson and LaRouche, constitute a potentially unique source of evidence that is not necessarily duplicated by any other material. Under the circumstances of the present case, consideration of whether the outtakes are cumulative requires review of the requested material by the military judge. The military judge's decision to quash the subpoena without conducting an in camera review of the requested material constituted an abuse of discretion.

## E. FURTHER PROCEEDINGS

Petitioner-CBS based the motion to quash the subpoena in part on the grounds that the outtakes were protected by a qualified newsgathering privilege. Petitioner-CBS relied on principles related to the newsgathering process and did not claim that Appellant's statements were made under conditions of confidentiality. Although the military judge indicated agreement with the concept of a qualified newsgathering privilege, he found it unnecessary to base his decision on the privilege because he determined that the outtakes were cumulative.

Under M.R.E. 501(a)(4), a privilege may be claimed under "[t]he principles of common law generally recognized in the trial of criminal cases in the United States district courts

pursuant to Rule 501 of the Federal Rules of Evidence insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the code, these rules, or this Manual." In the past, this Court has considered but has not resolved the question of whether a newsgathering privilege applies in the military justice system. See United States v. Rodriguez, 50 M.J. 38, 38 (C.A.A.F. 1998) (summary disposition). On appeal, the parties have referred to the question of whether a newsgathering privilege should be recognized in the military justice system, but they have not asked this Court to resolve whether the subpoena in this case should have been quashed on a qualified newsgathering privilege. Under these circumstances, we do not decide here whether such a privilege should be recognized in the military justice system.

The issue of an in camera review is a separate matter. Even to the extent that a qualified privilege has been recognized by some courts in the trial of federal civilian cases, the application of such a privilege to an in camera review has been highly case specific. See, e.g., United States v. Burke, 700 F.2d 70, 76-78 (2d Cir. 1983); Cuthbertson, 630 F.2d at 146-49. In that context, even if a qualified privilege applied to cases in the military justice system -- a matter that we do not decide here -- such a privilege would not preclude an in camera review pursuant to R.C.M. 703(f)(4)(C) under the

47

circumstances of the present case.  The description of the
material at issue in the present case -- video outtakes from a
specific interview in which Appellant discussed the events
occurring on the date of and in the place of the charged
offenses -- is sufficient to meet a threshold showing of
necessity for an in camera review.  The military judge could not
make an evaluation of necessity under the specific circumstances
of this case without reviewing the outtakes for content and
context.  See supra Part III.D.  Accordingly, we conclude that
the military judge in the present case must conduct an in camera
review of the requested materials prior to ruling on the motion
to quash the subpoena.

In any further hearing before the military judge on a
motion to quash the subpoena, the military judge alone will
inspect the requested materials in camera.  Such a hearing,
accompanied by inspection of the requested material in camera by
the military judge alone, will provide the appropriate forum for
consideration of issues pertinent to a motion to quash the
subpoena, such as the existence, if any, of a qualified
newsgathering privilege under M.R.E. 501(a)(4), the scope of any
such privilege, and the application, if any, of such a privilege
to the requested materials.

Our decision to order inspection in camera by the military
judge alone pertains to the present case.  We do not decide here

whether, under other circumstances, inspection by the parties under an appropriate protective order would be warranted. See Reece, 25 M.J. at 95 n.6.

## IV.  DECISION

We vacate the decision of the United States Navy-Marine Corps Court of Criminal Appeals and the order of the military judge quashing the Government's subpoena. We remand the record of trial to the Judge Advocate General of the Navy for return to the military judge for further consideration of whether relief should be granted to Petitioner-CBS under R.C.M. 703. Prior to ruling, the military judge shall order production of the requested material for in camera inspection by the military judge alone.

RYAN, Judge, with whom ERDMANN, Judge, joins (dissenting):

I agree that Appellant has standing to litigate the Government's appeal of the military judge's ruling quashing a third-party subpoena.  United States v. Wuterich, __ M.J. __ (19-21) (C.A.A.F. 2008).  However, because the Government's appeal in this case is an appeal of the military judge's ruling on a discovery motion -- a ruling that expressly noted that the object of the discovery could be admissible[1] -- and not "[a]n order or ruling which excludes evidence," I disagree that the United States Navy-Marine Corps Court of Criminal Appeals (CCA) had jurisdiction under Article 62 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2000), to hear the Government's appeal.  That the CCA had no jurisdiction under the facts of this case is supported both by the precedent of this Court and the precedent of the United States Court of Appeals for the First Circuit.  See United States v. Browers, 20 M.J. 356, 360 (C.M.A. 1985) (defining "exclusion" as used in Article 62(a)(1)(B), UCMJ, as a ruling involving inadmissibility); United States v. Watson, 386 F.3d 304, 310 (1st Cir. 2004) ("[The Criminal Appeals Act] unarguably restricts government appeals to specific categories of district court orders.  If an

---

[1] Transcript of Record at 87, United States v. Wuterich (Feb. 22, 2005) (Article 39(a), UCMJ, session) ("[T]he court clearly finds that this could be admissible into the evidence as statements of the accused under Military Rule of Evidence 801(d).").

order falls outside those categories, the government's attempted appeal must be dismissed.") (citation omitted).

A.   Statutory authorization for a government appeal

In criminal cases, prosecution appeals are not favored and are available only upon specific statutory authorization.  See United States v. Wilson, 420 U.S. 332, 336 (1975); 7 Wayne R. LaFave et al., Criminal Procedure §27.3(a)-(b) (3d. ed. 2007). Specifically relevant to this case, Article 62(a)(1)(B), UCMJ, grants the Government the authority to appeal "[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding."  Article 62(b), UCMJ, grants the CCA the jurisdiction to hear those appeals.

B.   "Order or ruling which excludes evidence"

This Court previously adopted a narrow construction of the language in Article 62, UCMJ, permitting the government to appeal from an order or ruling "which excludes evidence that is substantial proof of a fact material in the proceeding." Browers, 20 M.J. at 359-60.  In Browers, the Court differentiated appealable decisions from unappealable ones by asking whether the military judge made a ruling involving the admissibility of the evidence.  Writing for the Court, former Chief Judge Everett defined "excludes evidence" to mean "a ruling made at or before trial that certain testimony, documentary evidence, or real evidence is inadmissible."  Id. at

2

360 (emphasis added).  The Court acknowledged that this interpretation might result in a party being deprived of critical evidence, but expressed confidence in the "ability of military judges to make these delicate determinations."  Id.

Inexplicably, the majority dismisses former Chief Judge Everett's definition in Browers, a decision of this Court, as mere "observations."  Wuterich, __ M.J. at __ (31).  If the current majority has a different take on what the definition of "excludes" should be, as it is entitled to have, it should say so and explicitly overrule Browers rather than mischaracterize a holding of this Court.[2]

The majority suggests that Browers "concluded that the order was not appealable because it involved the question of trial scheduling, not the exclusion of evidence."  Wuterich, __ M.J. at __ (30).  Browers made no such conclusion, as the Court's language plainly demonstrates.  Browers explicitly states that "the issue is whether denial of a continuance requested so that the Government may produce a material witness constitutes the exclusion of evidence."  Browers, 20 M.J. at 360 (emphasis in original).  The Browers Court concluded that the

---

[2] Any relevance of the Court's composition during Browers, which the majority appears to suggest weighs against the precedential value of the opinion, Wuterich, __ M.J. at __ (32), is unclear at best.  Chief Judge Everett delivered the opinion of the Court; Judge Cox, while writing separately to concur in Browers, did not disagree with Judge Everett's opinion in general or his definition of "excludes" in particular.

3

denial of a continuance was not an appealable ruling because it was not an order that "excludes evidence" despite the fact that the ruling prevented the government from presenting two material witnesses.  The scheduling ruling in Browers, like the discovery ruling in this case, deprived the government of evidence, but did not "exclude" evidence for purposes of Article 62, UCMJ.

If any doubt remained as to the Court's intentions in Browers, former Chief Judge Everett later repeated the definition of "excludes evidence" as a ruling that "evidence is inadmissible," and stated that, in Browers, this Court "adopted a narrow construction of the statutory language."  United States v. True, 28 M.J. 1, 5 (C.M.A. 1989) (Everett, C.J., dissenting) (citing Browers, 20 M.J. at 360).[3]

---

[3] The Court in True considered whether the ruling of the military judge, which abated the court-martial, was one "which terminates the proceedings," not whether it was one "which excludes evidence."  28 M.J. at 2.  On that point Chief Judge Everett agreed.  Id. at 5 (Everett, C.J., dissenting).  While all federal circuits to have considered the issue agree that the analogous language in the first paragraph of 18 U.S.C. § 3731 ("a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment") should be construed broadly, see, e.g., Watson, 386 F.3d at 308 (crediting "Congress's intent that all such orders would be appealable unless the Double Jeopardy Clause forbade that course of action"), only the Fifth Circuit reads "suppresses or excludes evidence" as broadly.  See United States v. Smith, 135 F.3d 963, 967 (5th Cir. 1998) (holding that § 3731 provides the government with as broad a right to appeal an order suppressing or excluding evidence as the Constitution will permit).  Consequently the breadth of the language in True, applicable to statutory language regarding "terminates the proceedings," is of doubtful weight when considering the

4

One would think that Browers ends the inquiry as to the meaning of Article 62(a)(1)(B), UCMJ.  This Court concluded that "excludes" was a term of art relating to admissibility of evidence and saw "no reason to believe that Congress had any different intention in drafting Article 62(a)(1)."  Browers, 20 M.J. at 360.  This narrow view is consistent with the Supreme Court's instruction that the government could only take an appeal in a criminal case if it had express statutory authority, Wilson, 420 U.S. at 336, and its policy against piecemeal appeals in criminal cases, "where the defendant is entitled to a speedy resolution of the charges against him."  Will v. United States, 389 U.S. 90, 96 (1967); see also U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .").

But despite Browers, the majority looks to the parallel federal statute, 18 U.S.C. § 3731, in search of a different definition of "an order or ruling which excludes evidence" as specified by Article 62, UCMJ.  The majority states that it agrees with the First Circuit's approach that defines rulings excluding evidence under § 3731 as ones that "'either in substance or in form, limit the pool of potential evidence that would be admissible.'"  Wuterich, __ M.J. at __ (33) (quoting

different language "excludes evidence."  While the former directly implicates the Double Jeopardy Clause, Wilson, 420 U.S. at 336-37 (1975), the latter does not.

Watson, 386 F.3d at 313).  I do not believe, however, that the precedent of the First Circuit supports the Court's holding today.

The First Circuit, noting Congress's instruction that § 3731 should be construed liberally, concludes only that "the second paragraph of section 3731, in its present form, covers all pretrial orders that deny admissibility to virtually any evidence on virtually any ground."  Watson, 386 F.3d at 309 (emphasis added).  In Watson, a case with a fact pattern similar to that of Browers, the government attempted to appeal from a trial judge's denial of a government motion requesting a continuance.  Without the continuance, the government could not depose a key witness and would be forced to prosecute Watson without the benefit of the witness's testimony.  Id. at 307.  The First Circuit held that it had no jurisdiction under § 3731 to hear the government's appeal because the trial court was not engaged in making an evidentiary ruling.  Id. at 311.  The court rejected the government's argument that the trial court's rulings were a but-for cause of the government's inability to gather or present evidence at trial.  Id.  The court explicitly distinguished between available and admissible evidence, stating that "[a]lthough the orders appealed from will certainly hamper (and may effectively prevent) the obtaining and subsequent use of [the witness's] testimony, those orders did not, either in

6

substance or in form, limit the pool of potential evidence that would be admissible at the forthcoming trial." Id. at 313 (emphasis added). For the First Circuit, admissibility, rather than availability, is the critical factor in determining when the government may appeal an order under § 3731. As in Browers, even though the trial court's ruling would "certainly hamper (and may effectively prevent) the obtaining and subsequent use" of a witness's testimony, the First Circuit still held that the ruling did not exclude evidence. Id. The First Circuit's approach is consistent with this Court's position in Browers, and different than today's decision, which implies that any decision that limits the pool of available evidence would be appealable under Article 62, UCMJ.

The majority's decision is also contrary to the approach favored by the other federal courts of appeals, which reject the argument that any trial court order or ruling that hampers or effectively prevents the obtaining or use of evidence is appealable by the government under § 3731. See, e.g., United States v. Hickey, 185 F.3d 1064, 1066-67 (9th Cir. 1999) (finding no jurisdiction to hear appeal from order denying government's request to unseal defendant's financial affidavits); United States v. Camisa, 969 F.2d 1428, 1429 (2d Cir. 1992) (finding no jurisdiction to hear appeal from order denying government's request to disqualify defendant's counsel

7

which possibly rendered a witness's testimony inadmissible).  As the First Circuit stated, "[w]hatever incidental effect those orders may have on evidentiary matters, they are simply not the proximate cause of the exclusion of any evidence."  Watson, 386 F.3d at 312.

>    C.  The majority's rule is not supported by the decisions of the federal courts of appeals

The majority suggests that its approach, in the context of the facts of this case, is consistent with the approach of other federal circuits.  See Wuterich, __ M.J. at __ (27-29) ("The courts of appeals have addressed the meaning of the term 'excluding evidence' under 18 U.S.C. § 3731 and have concluded that the term includes an order quashing a subpoena.").  I disagree.  In fairness, the federal courts of appeals have at times permitted appeals under 18 U.S.C. § 3731 in cases involving the quashing of subpoenas in the context of grand jury investigations.  See, e.g., In re Grand Jury Subpoenas (Kiefaber), 774 F.2d 969, 972-73 (9th Cir. 1985), vacated on other grounds, 823 F.2d 383 (9th Cir. 1987); In re Grand Jury Empanelled (Colucci), 597 F.2d 851, 856 (3d Cir. 1979).  But each of those cases relied on the precise language -- "[t]he provisions of this section shall be liberally construed to effectuate its purposes" -- in § 3731 that is not present in Article 62, UCMJ.  See Kiefaber, 774 F.2d at 972-73 ("Therefore,

8

in light of the legislative direction to construe broadly the phrase 'suppressing or excluding evidence,' we conclude that the district court's order quashing the grand jury subpoenas constitutes an order suppressing or excluding evidence.") (footnote omitted); Colucci, 597 F.2d at 856 ("In light of this legislative direction to construe broadly the government's right of appeal, this Court has held that orders which do not, 'strictly speaking,' suppress evidence but which have the 'practical effect' of excluding evidence from a proceeding, are within the ambit of [section] 3731."). Yet this is the very language upon which the majority claims not to rely in construing Article 62, UCMJ. Wuterich, __ M.J. at __ (26) ("[I]t would be inappropriate to apply the liberal construction mandate of section 3731 when interpreting Article 62, UCMJ."). And, of course, at the pre-indictment grand jury stage an individual is a target, not a defendant, so there is not yet any Sixth Amendment speedy trial concern. See United States v. Marion, 404 U.S. 307, 313 (1971) ("[The Sixth Amendment] would seem to afford no protection to those not yet accused, nor would [it] seem to require the Government to discover, investigate, and accuse any person within any particular period of time.").

    D. The majority's holding is overly broad

    The problems with the majority's new position are twofold. First, it highlights that Browers is being overruled sub

silentio.  The military judge's ruling at issue in Browers clearly limited the pool of evidence that was available to the government to proffer at trial by preventing the government from presenting two material witnesses, yet this Court held that the ruling did not exclude evidence for the purposes of Article 62, UCMJ.  One cannot reconcile today's holding with the precedent of this Court in Browers.

This highlights the second problem with the majority's position.  Although the majority expressly states that a liberal construction of Article 62, UCMJ, is not warranted, its holding is extraordinarily broad.  See Wuterich, __ M.J. at __ (25-26) (stating that because Article 62, UCMJ, contains no language on statutory interpretation, it would be inappropriate to apply § 3731's liberal construction mandate when interpreting Article 62).  If one accepts that any order or ruling that limits the pool of evidence that is available to the government is appealable under Article 62(a)(2)(B), then any ruling by a military judge that impacts the availability, as opposed to the admissibility, of evidence would be a proper subject of a government appeal.  Under the majority's new rule there is no principled way to distinguish among:  garden-variety scheduling orders, such as those at issue in Browers, which hindered the government's ability to offer a witness's testimony; discovery

rulings of any sort that go against the government; and actual rulings on the admissibility of evidence.

The majority relies heavily on the fact that Browers and Watson considered what it characterizes as case-management orders to distinguish the holdings in those cases from the majority's broad interpretation of § 3731 and Article 62, UCMJ. See Wuterich, __ M.J. at __ (28-31). Presumably, the majority believes that trial scheduling orders may "limit the pool of potential evidence" without qualifying under Article 62, UCMJ, solely because trial scheduling falls within the sound discretion of the trial judge. Of course, neither case rested on that fact. Moreover, discovery rulings, as the one in the instant case undoubtedly is, may "limit the pool of potential evidence" and are also within the sound discretion of the trial court. See, e.g., Diamond Ventures, LLC v. Barreto, 452 F.3d 892, 898 (D.C. Cir. 2006) ("[T]he district court has wide discretion in managing discovery."); Faigin v. Kelly, 184 F.3d 67, 84 (1st Cir. 1999) ("A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes."); Trepel v. Roadway Express, Inc., 194 F.3d 708, 716 (6th Cir. 1999) ("Matters of discovery are in the sound discretion of the district court."). Both types of decisions being within the discretion of a trial court and potentially or actually limiting

11

the pool of potential evidence, the only distinction available appears based on ad hoc decisions by this Court.  This is a less-than-workable legal standard.

    E.  Admissibility is the touchstone

    A military judge's ruling quashing a subpoena duces tecum is a discovery ruling, which may impact the availability of evidence, but it neither denies the admissibility of the evidence nor excludes it.  This distinction is an important one that should make a difference based on the explicit language of Article 62(a)(1)(B), UCMJ.  Courts faced with a motion to quash a subpoena duces tecum in a criminal case consider more than admissibility -- they balance the general public's duty to testify, Branzburg v. Hayes, 408 U.S. 665, 688 (1972), against other interests, such as the burden placed on the recipient of the subpoena, see United States v. Nixon, 418 U.S. 683, 698 (1974), and the explicitly stated goal of expediting the defendant's trial.  See id.  The balancing is contextual and uses a four-factor test articulated by Judge Weinfeld of the United States District Court for the Southern District of New York and adopted by the Supreme Court in Nixon, 418 U.S. at 699-700 (citing United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)).[4]  The Weinfeld factors are important because they

---

[4] The Drafters' Analysis for Rule for Courts-Martial (R.C.M.) 703(e) also cites Nixon in its discussion of the purpose of a

illustrate the difference between discovery rulings and evidentiary orders, a difference the majority ignores.

Under the Weinfeld test, the moving party cannot require production of documents prior to trial unless that party shows:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Id.

It may be that a court quashes a subpoena based on the first Weinfeld factor -- lack of relevancy. If so, this would be a ruling on the admissibility of evidence and fall within Browers and Watson, even if styled a discovery order by the trial judge. In contrast, the other three Weinfeld factors do not weigh or consider whether the evidence is admissible. Rather, the second factor considers the burden placed on the party receiving the subpoena, the third factor considers the potential impact on the defendant's right to a speedy trial, and the fourth factor protects parties from unwarranted requests. These factors address equitable considerations that protect the

---

subpoena duces tecum. Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-37 (2008 ed.).

rights of third parties and the defendant, not evidentiary concerns.

As the United States Court of Appeals for the District of Columbia Circuit stated in a case involving a government appeal, an order regarding a subpoena in no way finally decides that any of the subpoenaed material must be denied to the jury and "cannot be deemed an order 'suppressing or excluding evidence,' or otherwise within the contemplation of the Criminal Appeal Act, 18 U.S.C. § 3731." Nixon v. Sirica, 487 F.2d 700, 707 n.23 (D.C. Cir. 1973). Denials of discovery requests may ultimately make evidence unavailable, but not all such denials are -- or should be -- appealable under Article 62, UCMJ, because they usually do not address the admissibility of the evidence.

F. No ruling that evidence is inadmissible in this case

In this case the ruling of the military judge did not exclude evidence in any evidentiary sense, although the ruling may have, or even will have, the effect of making the evidence unavailable. The military judge not only refrained from ruling that the subpoenaed tapes were inadmissible, he opined that they likely were. Transcript of Record at 87, Wuterich (Article 39(a), UCMJ, session) ("[T]he court clearly finds that this could be admissible into the evidence as statements of the accused under Military Rule of Evidence 801(d)."). In his words, the order was a "discovery denial." Transcript of Record

14

at 93, Wuterich (Article 39(a), UCMJ, session).  Although the military judge's ruling "will certainly hamper (and may effectively prevent) the obtaining and use" of the outtakes by the Government, the ruling "did not, either in substance or in form, limit the pool of potential evidence that would be admissible at the forthcoming trial."  Watson, 386 F.3d at 3131 (emphasis added).

As CBS acknowledged at oral argument, if the Government obtains possession of the outtakes, nothing in the military judge's order would prevent the Government from proffering the outtakes as evidence.  Transcript of Oral Argument at 00:35:25, Wuterich, Nos. 08-6006, 08-8020, 08-8021.  This is because it was not an order "which excludes evidence."  The majority ignores this salient fact, and focuses instead on a straw man –– the possibility that the Government could obtain the outtakes through negotiation or other means, a possibility it then dismisses.  Wuterich, __ M.J. at __ (37-38).

Of course this goes to availability, not admissibility, and is not relevant for purposes of Article 62(b), UCMJ.  Further, I note that CBS attempted to work with the Government by providing the 60 Minutes broadcast, offering to authenticate it, and requesting materials from the Government to help determine whether the outtakes were indeed cumulative.  In response, the Government refused either to accept the broadcast or to provide

15

CBS with the requested materials.  CBS Broadcasting Inc.'s Petition for a Writ of Prohibition and/or Mandamus at 3-4, 5 n.3, United States v. Wuterich, No. 08-8020 (C.A.A.F. July 10, 2008); Transcript of Oral Argument at 00:27:54, Wuterich, Nos. 08-6006, 08-8020, 08-8021.  Given the fluid nature of third-party discovery in practice, there is no basis for concluding that absence of progress in light of the Government's lack of cooperation is evidence of the futility of negotiations.

G.  Appellant's trial

The previous construction of Article 62, UCMJ, by this Court in Browers was narrow, consistent with the precept that government appeals are disfavored and only permitted where expressly authorized by statute, and consonant with the policy against piecemeal appeals in criminal cases, "where the defendant is entitled to a speedy resolution of the charges against him."  Will, 389 U.S. at 96; see also U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); Watson, 386 F.3d at 310 ("Section 3731 was 'carefully circumscribed by Congress out of a desire (among other reasons) to safeguard individuals from the special hazards inherent in prolonged litigation with the sovereign.'") (quoting United States v. McVeigh, 106 F.3d 325, 330 (10th Cir. 1997)); United States v. Kane, 646 F.2d 4, 7 (1st Cir. 1981) (cautioning that if interlocutory orders related

16

to discovery and other preliminary matters were appealable under the second paragraph of section 3731, "defendants' rights to a speedy trial could be subverted").

As this case demonstrates, these principles, and the impact of expansive jurisdiction under Article 62, UCMJ, are of more than academic concern. This is especially true in the military justice system, where defendants' detailed military counsels are subject to reassignment and retirement. Appellant's trial was automatically stayed under R.C.M. 908 in February 2008 by the Government's interlocutory appeal of the military judge's granting of a motion to quash a third-party subpoena. See R.C.M. 908(b)(4) (providing an automatic stay of a court-martial pending disposition by the CCA of an interlocutory government appeal).[5] During that period Appellant lost the representation of both of his detailed military counsel due to retirement. Appellant's Reply at 1, United States v. Wuterich, No. 08-6006

---

[5] The majority implies that the Government's appeal to this Court has not delayed this case -- as if Appellant's court-martial might somehow proceed in parallel to the appellate proceedings currently before this Court -- because this Court has not granted a stay. Of course the court-martial has not proceeded, and it seems strange to suggest that it would while the Court entertained this appeal. In any event, the dearth of statutory procedures relating to whether a proceeding after the appeal to the CCA is stayed illustrates the concerns I previously raised regarding this Court's assumption of jurisdiction to hear Article 62, UCMJ, appeals -- the statute does not countenance the involvement of this Court. See United States v. Lopez de Victoria, 66 M.J. 67, 74-77 (C.A.A.F. 2008) (Ryan, J., joined by Erdmann, J., dissenting).

17

(C.A.A.F. Sept. 2, 2008); Transcript of Oral Argument at 00:46:41, Wuterich, Nos. 08-6006, 08-8020, 08-8021. The Government concedes that these losses may prejudice Appellant's defense. Transcript of Oral Argument at 00:47:26, Wuterich, Nos. 08-6006, 08-8020, 08-8021.

And to what end? Common sense suggests that CBS endeavored to make the 60 Minutes segment at issue as newsworthy as possible, which at least recommends the idea that to the extent Appellant made incriminating, shocking, or newsworthy statements, they are almost certainly in the broadcast, which CBS provided to the Government. Despite the absence of any support for the suggestion that the contested outtakes contain anything new, and despite the fact the Government conceded at argument that it has evidence on every element of every offense,[6] the majority's ruling allows the Government to continue to litigate this issue and further prejudice Appellant's defense. Under the Browers construction, the CCA's opinion would be vacated for lack of jurisdiction and Appellant's trial would proceed apace.

## Conclusion

Appellant challenges the jurisdiction of the CCA to hear the Government's appeal of a military judge's ruling quashing a

---

[6] Transcript of Oral Argument at 00:45:44, Wuterich, Nos. 08-6006, 08-8020, 08-8021.

subpoena.  This Court has previously stated that the "jurisdiction of courts is neither granted nor assumed by implication" and that "[t]hat maxim is particularly apt in the case of an Article I court whose jurisdiction must be strictly construed."  Loving v. United States, 62 M.J. 235, 244 n.60 (C.A.A.F. 2005) (citations and quotation marks omitted).  The majority concludes that the CCA has jurisdiction over a military judge's order quashing a third-party subpoena, an order that did not rule that any evidence was inadmissible.  I believe that this is an unwarranted expansion of the CCA's jurisdiction that cannot be justified by the language of Article 62(a)(1)(B), UCMJ.  Because the majority's holding mischaracterizes this Court's prior ruling in Browers, threatens defendants' Sixth Amendment right to a speedy trial, and opens the door to interlocutory appeals from discovery rulings, I respectfully dissent.